**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

| | |
|---|---|
| IN RE: | CHAPTER 11 CASE |
| URBAN OAKS BUILDERS LLC, Debtor. | |
| | CASE NO. 18-34892 (S.D. Tex.) |

SOUTHSTAR CAPITAL GROUP, I, LLC,
COTTINGTON ROAD TIC, LLC, and
DURBAN ROAD TIC, LLC,

       Plaintiffs,

vs.                            CASE NO. 6:18-CV-1453-ORL-22GIK

1662 MULTIFAMILY LLC, HINES 1662     (Case No. 2018-CA-415-OC,
MULTIFAMILY, LLC, HINES             Circuit Court of the Ninth Judicial
INVESTMENT MANAGEMENT           Circuit, Osceola County, Florida)
HOLDINGS LIMITED PARTNERSHIP,
HIMH GP, LLC, HINES INTEREST
LIMITED PARTNERSHIP, JCH
INVESTMENTS, INC, and URBAN
OAKS BUILDERS LLC

       Defendants.

_____/

## <u>URBAN OAKS BUILDERS LLC'S RESPONSE TO PLAINTIFFS' MOTION TO ABSTAIN AND REMAND</u>

      Urban Oaks Builders LLC ("UOB" or "Debtor") hereby files this Response to Southstar

Capital Group, I, LLC, Cottington Road TIC, LLC and Durban Road TIC, LLC's ("Plaintiffs")

Motion to Abstain and Remand [Dkt. No 25].

### I.    INTRODUCTION

      UOB is the debtor in a Chapter 11 case (the "UOB Bankruptcy") pending in the United

States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy

Court") and a defendant in the above-captioned case (the "UOB Defective Work Lawsuit"). In

the UOB Defective Work Lawsuit, Plaintiffs' seek damages from UOB based on allegedly

38715927

defective construction work performed by UOB on an apartment complex now owned by Cottington Road TIC, LLC and Durban Road TIC, LLC. Plaintiffs also assert claims against various other defendants on an alter ego theory derivative of the allegedly defective work performed by UOB.

The UOB Defective Work Lawsuit is clearly a core proceeding under 28 U.S.C. § 157(b) (as all of the claims are either directly against the Debtor or derived from the Debtor's actions) and as such have been properly removed by UOB, based on the UOB Bankruptcy, to the Middle District of Florida. The UOB Bankruptcy is also plainly appropriate given the claims that have been asserted against UOB by Plaintiffs in the UOB Defective Work Lawsuit—which, if successful, would greatly exceed UOB's assets and render it insolvent.

Plaintiffs' current motion seeks to have this Court ignore the proper removal of the UOB Defective Work Lawsuit and remand it to Florida state court by arguing that the UOB Defective Work Lawsuit is not a core proceeding and that the UOB Bankruptcy is a "bad faith" sham. Neither of these positions is valid and the Court should deny Plaintiffs' motion accordingly.

First, as pre-petition litigation *against* the Debtor, the UOB Defective Work Lawsuit is indisputably "core" under 28 U.S.C. § 157(b). UOB's potential liability in the UOB Defective Work Lawsuit encompasses nearly the entire Bankruptcy estate, and any judgment resulting from the UOB Defective Work Lawsuit is "inextricably intertwined" with the property that is the subject of the UOB Bankruptcy. In fact, the Plaintiffs must inevitably file a proof of claim in the UOB Bankruptcy to pursue any recovery from UOB and that fact alone means that the UOB Defective Work Lawsuit is "core" to the UOB Bankruptcy.

Plaintiffs' arguments that the UOB Bankruptcy is in bad faith and a sham are also unfounded and unsupported. The plain facts are that UOB filed for bankruptcy because of the

stresses placed on its financial state by the UOB Defective Work Lawsuit, combined with its insurers' subsequent refusal to cover or defend UOB from Plaintiffs' claims. Bankruptcy exists exactly for situations like this—when a debtor's liabilities appear able to overwhelm the financial stability of the estate, making resolution of claims in an expeditious, economical and consolidated location preferred by the law.[1] Because of the pressure on UOB's bankruptcy estate by having to litigate on two fronts, and because there is no real doubt that claims *against the Debtor* are "core" proceedings to the UOB Bankruptcy, the Bankruptcy Court is the most appropriate venue for this case.

## II.    BACKGROUND

The UOB Defective Work Lawsuit is one of two lawsuits related to allegedly defective construction at the Celebration apartment complex (the "Celebration Apartments"), which UOB built as general contractor under a contract with 1662 Multifamily LLC ("1662 Multifamily"), which previously owned the project.[2]  Southstar Capital Group, I, LLC purchased the Celebration Apartments in 2016 from 1662 Multifamily for $67,000,000.00, approximately five months after UOB had completed its construction work.  In February 2017, UOB received notice that the corner balconies at the Celebration Apartments were deflecting downward.  UOB responded to this notice and commenced structural repairs to the corner balconies at the Celebration Apartments pursuant to Florida Statute § 558.004 and a written agreement between

---

[1]    *See, e.g., In re First Cent. Fin. Corp.*, 377 F.3d 209, 217 (2d Cir. 2004) ("The chief purposes of the bankruptcy laws are 'to secure a prompt and effectual administration and settlement of the estate of all bankrupts within a limited period,' 'to place the property of the bankrupt, wherever found, under the control of the court, for equal distribution among the creditors,' and 'to protect the creditors from one another.'") (Internal citations omitted); *In re Slater*, 318 B.R. 881, 886 (Bankr. M.D. Fla. 2004) ("[O]ne of the primary purposes of the Bankruptcy Code, is to relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh, free from the obligations and responsibilities consequent upon business misfortunes."); *see also* Fed. R. Bankr. P. 1001 (the Bankruptcy Rules "shall be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every case and proceeding.").

[2]    For a more detailed discussion of the background facts and procedural history, UOB refers the Court to its Motion to Transfer Venue [Dkt. No. 8], at 2–8.

UOB and Southstar Management I, LLC ("Southstar Management," an affiliate of Plaintiffs and a non-party). But thereafter, Plaintiffs and UOB could not agree on the scope of the required repairs to the Celebration Project and repeated attempts to negotiate and resolve this disagreement were unsuccessful. Plaintiffs then brought the UOB Defective Work Lawsuit in Florida state court.

The UOB Defective Work Lawsuit included claims by the Plaintiffs that 1662 Multifamily and certain other affiliates of 1662 Multifamily (the "Other Defendants") were liable to Plaintiffs for UOB's allegedly defective work based on alter-ego theories and assertions of alleged concealment, misrepresentation and fraud—each of which claims is directly derived from and based on the construction work performed by UOB. *See* Compl. ¶¶ 26, 38–73.

Both prior to and after the filing of the UOB Defective Work Lawsuit, UOB sought coverage from its insurance carriers—each of whom also owed coverage obligations not only to UOB but also to 1662 Multifamily and the Other Defendants under the controlled insurance program applicable to the construction of the Celebration Apartments. However, UOB's commercial general liability insurance carriers refused to provide coverage for and defend and indemnify UOB, 1662 Multifamily and the Other Defendants from Plaintiffs' claims. Accordingly, UOB, 1662 Multifamily and the Other Defendants brought a declaratory judgment action against their insurance carriers in Florida (the "Coverage Action") and the Coverage Action has since been removed to the Middle District of Florida, where UOB's motion to transfer it to the Bankruptcy Court is pending.

As a result of the insurers' unwillingness to commit to the defense and coverage of UOB, and because UOB's insurance makes up the bulk of its assets, UOB initiated the UOB Bankruptcy and filed for Chapter 11 protection on August 31, 2018 in order to address the

potential liability stemming from Plaintiffs' claims in the UOB Defective Work Lawsuit. Southstar has appeared in the UOB Bankruptcy.  After filing the UOB Bankruptcy, UOB removed the UOB Defective Work Lawsuit to this Court and moved to transfer it to the Bankruptcy Court, following the procedures set forth in 28 U.S.C. § 1452(a) and Bankruptcy Rule 9027(a)(1).  Plaintiffs have now responded with a Motion to Abstain and Remand. Plaintiffs' motion is unavailing, as shown below.

### III. ARGUMENT AND AUTHORITIES

Plaintiffs seek to deny UOB's right to have the claims asserted against it in the UOB Defective Work Lawsuit settled in the Bankruptcy Court before which the UOB Bankruptcy is pending.  Specifically, Plaintiffs have asked this Court to "abstain" from deciding this case and remand it to Florida state court, primarily relying on 28 U.S.C. § 1334(c)(2) (also known as "mandatory abstention"), and, in the alternative, 28 U.S.C. §§ 1334(c)(1) and 1452(b) ("permissive abstention" and "equitable remand," respectively.)  The thrust of Plaintiffs' arguments in favor of abstention and remand are that the claims asserted by Plaintiffs against UOB in the UOB Defective Work Lawsuit are not "core" bankruptcy proceedings.  Plaintiffs' arguments in this regard blatantly ignore black-letter bankruptcy law which establishes that claims *against* the debtor arising prior to bankruptcy are "core" to the bankruptcy case.  Plaintiffs also fail to acknowledge that bankruptcy judges have *exclusive* jurisdiction over all property of the Debtor's estate, which includes *alter ego* claims against *all* defendants, such as those brought by Plaintiffs against 1662 Multifamily and the Other Defendants.  The core nature of the UOB Defective Work Lawsuit alone forecloses Plaintiffs' arguments for mandatory abstention and remand.  But, in addition, the vast majority of the factors for equitable remand and permissive abstention favor UOB, which makes relief under those discretionary powers inappropriate.  For these reasons, Plaintiffs' motion must be denied.

## A. Plaintiffs do not meet their burden to show that they are entitled to Mandatory Abstention under Section 1334(c)(2).

Under section 1334(c)(2), a court must abstain from hearing certain state-law claims *only* when a party proves *all* of the following four elements: "(1) the claims have no independent basis for federal jurisdiction other than section 1334(b); (2) the claims are non-core; (3) an action has been commenced in state court; and (4) the action can be timely adjudicated in state court." *Mugica v. Helena Chem. Co. (In re Mugica)*, 362 B.R. 782, 792 (Bankr. S.D. Tex. 2007) (citing *Schuster v. Mims (In re Rupp & Bowman Co.)*, 109 F.3d 237, 240 (5th Cir. 1997)). Here, Plaintiffs have failed to meet their burden to establish mandatory abstention for two reasons. First, the UOB Defective Work Lawsuit is a "core" proceeding under 28 U.S.C. § 157(b) because it involves Plaintiffs' claims against UOB's bankruptcy estate. Second, Plaintiffs have not met their burden to prove that the action can be timely adjudicated in Florida state court.

### 1. The UOB Defective Work Lawsuit is a <u>core proceeding</u>.

The Bankruptcy Code enumerates numerous examples of core proceedings, including:

(A) matters concerning the administration of the estate;
(B) the allowance or disallowance of claims against the estate and the estimation of claims or interests for the purposes of confirming a plan;
(M) orders approving the use or lease of property; and
(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor relationship

28 U.S.C. 157(b)(2). It is black-letter law that the adjudication of any "alleged debt or obligation" of the Debtor and "controversies relating to property within [the Debtor's] possession" are at the core of the federal bankruptcy power.[3] This is true, *regardless* of whether

---

[3] *E.g. Katchen v. Landy*, 382 U.S. 323, 329-330 (1966) (holding that such disputes were within the scope of "summary jurisdiction," the predecessor to "core proceedings" under the Bankruptcy Code); *see also Twyman v. Wedlo, Inc.*, 204 B.R. 1006, 1019 fn 23 (Bankr. N.D. Ala. 1996) ("Suits against debtor-defendants are generally considered core proceedings[.]"); *In re Meyertech Corp.*, 831 F.2d 410, 417 (3d Cir. 1987) (an action "which has as its foundation a question of the validity of a claim which accrued under state law against the bankrupt estate prior to bankruptcy" is undisputedly "core" as the action "represents a right to payment for losses suffered as a result of" the alleged breach or tort under state law).

an action is based on state law, whether the nature of the action is legal, rather than equitable, or whether a right to jury trial would otherwise apply. *Katchen*, 382 U.S. at 337. As the Supreme Court explained in *Katchen*, "in cases of bankruptcy, many incidental questions arise in the course of administering the bankrupt estate, which would ordinarily be pure cases at law, and in respect of their facts triable by jury, but, as belonging to the bankruptcy proceedings, *they become cases over which the bankruptcy court, which acts as a court of equity, exercises exclusive control*." *Id.* (quoting *Barton v. Barbour*, 104 U.S. 126, 133–134 (1881)) (emphasis added).

Plaintiffs assert that because the UOB Defective Work Lawsuit is composed of state law claims that are triable by a jury, the UOB Defective Work Lawsuit is not a "core" proceeding. But their argument is not supported by applicable caselaw and is directly in conflict with the very purpose of bankruptcy. The authorities Plaintiffs cite in favor of their position only disclaim "core" status for lawsuits *by the debtor*.[4] But the case law regarding claims asserted *against* a debtor strongly support that such proceedings are "core" matters under 28 U.S.C. § 157. 28 U.S.C. § 157(b).

And even the cases relating to claims asserted *by* the debtor clearly support the conclusion that virtually all claims involving the estate can be considered a "core" proceeding, as long as those claims are "inextricably intertwined" with the property in bankruptcy. *See, e.g., In re Harris Pine Mills*, 44 F.3d 1431, 1438 (9th Cir. 1995) (post-petition claims alleging fraud and RICO violations against a bankruptcy trustee by purchasers of estate, arising out of the conduct

---

[4]     *See In re Artecity Mgmt., LLC*, 10-31406-BKC-AJC, 2010 WL 4340110, at *2 (Bankr. S.D. Fla. Oct. 25, 2010) (plaintiff-debtor's action against defendants relating to a pre-petition dispute not "core."); *In re Orion Pictures Corp.*, 4 F.3d 1095 (2d Cir. 1993) ( "core" proceedings did not include debtor's contract claims *against the non-debtor* party, because it did not concern "administration" of the estate); *In re Leco Enterprises, Inc.*, 144 B.R. 244, 249 (S.D.N.Y. 1992) (holding that a third-party adversary proceeding *between non-debtors* was not core because it "concerns purported breaches and delays of a contract between these non-debtors"); *In re Satelco, Inc.*, 58 B.R. 781 (Bankr. N.D. Tex. 1986) (debtor's action *against* its customers to recover accounts receivable not "core.").

of the sale of estate property in chapter 11 case, were "core" proceedings because the claims were "inextricably intertwined" with the estate's property).  This determination is compelled here as well as the inevitable result of Plaintiffs' success or failure in the UOB Defective Work Lawsuit will be to affect UOB's assets that are now under the purview of the Bankruptcy Court in the UOB Bankruptcy.

Plaintiffs' other argument is that the UOB Defective Work Lawsuit involves "garden variety state-law claims" and is inappropriate for the Bankruptcy Court since it "does not invoke substantive rights created by federal bankruptcy law." *See* Pls.' Mot. at 12.  But courts regularly determine that a bankruptcy court's "arising in" (and therefore "core") jurisdiction includes matters of state law.  *See Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925 (5th Cir. 1999) (affirming denial of mandatory abstention and holding that Chapter 11 debtor's state-law malpractice claim against an accountant based on Texas state law was a core proceeding, despite debtor's argument that the claims were not based on federal bankruptcy law but rather state law involving "private rights").  Plaintiffs' "interpretation of core bankruptcy matters is too narrow," as "state law does not prevent [claims involving the debtor's estate] from involving core jurisdiction."  *Id*; *see also* 28 U.S.C. § 157(b)(3) ("[D]etermination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by state law.").

Here, it is indisputable that Plaintiffs' claims in the UOB Defective Work Lawsuit are all brought *against* the debtor UOB and comprise the vast majority of the liabilities against the UOB's bankruptcy estate.  The UOB Defective Work Lawsuit is therefore a core proceeding.  *See Katchen*, 382 U.S. at 329-330; 28 U.S.C. § 157(b)(2)(B).

**a.** ***The UOB Defective Work Lawsuit is also "core" because Plaintiffs must file a proof of claim in the UOB Bankruptcy in order to assert their claim.***

In addition to the foregoing, it is black-letter bankruptcy law that filing a proof of claim in bankruptcy transforms a pre-petition state law claim filed in state court into a core proceeding.[5] Here, Plaintiffs must inevitably file a proof of claim in the UOB Bankruptcy for the claims that have been asserted in the UOB Defective Work Lawsuit. The current deadline for the proof of claim is January 23, 2019, and if Plaintiffs fail to do so, their claims against UOB will be lost. *See* 11 U.S.C. § 502(a), FED. R. BANKR. P. 3001, 3003.

The Court cannot allow Plaintiffs to have their cake and eat it too by filing a proof of claim in the UOB Bankruptcy while seeking to remand the UOB Defective Work Lawsuit for not being "core." This would be contrary to the fundamental principles of bankruptcy. If Plaintiffs are permitted to circumvent the carefully crafted rules of law under the Bankruptcy Code by virtue of their current motion, the Bankruptcy Court's core jurisdictional power to adjudicate the debtor-creditor relationship and to oversee administration of the UOB Bankruptcy would be jeopardized and set precedent harmful to the bankruptcy process, not just for this case, but in all other bankruptcy cases. Remand and abstention must be denied on this basis alone.

---

[5]     *See In re Argus Group 1700, Inc.*, 206 B.R. 737, 747 (Bankr. E.D. Pa. 1996) (determining that "[d]ebtors' proposition that the filing of a proof of claim in bankruptcy *transforms a pre-petition state law claim* which was filed in state court before the bankruptcy *into a core proceeding* is sound.") (emphasis added); *In re Best Reception Sys., Inc.*, 220 B.R. 932, 944 (Bankr. E.D. Tenn. 1998) ("Where a party has filed a proof of claim in a debtor's case, *any action asserted by that party against the debtor that raises the same issues as those encompassed by the proof of claim is a core proceeding*[.]"); *Maintainco, Inc. v. Mitsubishi Caterpillar Forklift Am., Inc. (In re Mid–Atlantic Handling Sys., LLC)*, 304 B.R. 111, 123 (Bankr. D. N.J. 2003) ("Because the proof of claim filed . . . encompasses the same issues as those raised by the removed state law proceeding (in fact, the state court complaint was attached to the proof of claim), the filing, without more, *converted the underlying action into a core proceeding*[.]").

b.  ***Bankruptcy law dictates that the types of claims alleged in the UOB Defective Work Lawsuit, including claims against 1662 Multifamily and the Other Defendants, are property of the estate and therefore "core."***

Plaintiffs' assertion that the claims asserted against 1662 Multifamily and the Other Defendants are non-core are also incorrect. Alter ego claims against a debtor's affiliated entities, are unequivocally "property of the estate." *S.I. Acquisition, Inc. v. Eastway Delivery Serv., Inc. (In re S.I. Acquisition, Inc.)*, 817 F.2d 1142, 1152–53 (5th Cir. 1987) (holding that creditor's action against non-bankrupt other defendants, based on state-law claims of alter ego against defendants and debtor, belonged to the debtor in bankruptcy and was therefore "property of the estate" such that a bankruptcy court would have exclusive jurisdiction over it); *Baillie Lumber Co., LP v. Thompson*, 413 F.3d 1293, 1295 (11th Cir. 2005) (holding that an "alter ego action" will be the property of the bankruptcy estate, where the claim is "a general claim that is common to all creditors" and "allowed by state law"); *see also In re PCH Communications, LLC*, 16-17186-BKC-LMI, 2017 WL 3638196, at *2 (Bankr. S.D. Fla. Mar. 1, 2017) ("[A] claim for alter ego for harm to all creditors is property of the estate[.]") Here, the only creditors to this suit are Southstar, Durban Road and Cottington Road who have together alleged *alter ego* claims against *all* the defendants.[6] Plaintiffs cannot dispute that the Bankruptcy Court before which the UOB Bankruptcy is pending has absolute and "exclusive jurisdiction" over "*all the property, wherever located*, of the debtor as of the commencement of such case, and of *property of the estate*." 28 U.S.C. § 1334(e)(1) (emphasis added.). As a matter of law, therefore, the *alter ego* claims against 1662 Multifamily and the Other Defendants are property of the estate, and therefore within the exclusive jurisdiction of the Bankruptcy Court. *See S.I. Acquisition*, 817 F.2d at 1152–53; 28 U.S.C. § 1334(e)(1).

---

[6]     Other creditors have also filed proofs of claim in the UOB Bankruptcy.

## 2. Plaintiffs have not met their burden to demonstrate that the UOB Defective Work Lawsuit can be timely adjudicated in state court.

Plaintiffs have also failed to prove another element of mandatory abstention—that the UOB Defective Work Lawsuit will be adjudicated in a timely manner in state court. Courts consider a number of non-exhaustive factors, including: "(1) backlog of the state court and federal court calendar; (2) status of the proceeding in state court at time of removal; (3) status of the bankruptcy case; (4) the complexity of the issues to be resolved; (5) whether the parties consent to the bankruptcy court entering judgment in the non-core case; (6) whether a jury demand has been made; and (7) whether the bankruptcy case is a reorganization or liquidation." *Lennar Corp. v. Briarwood Capital LLC*, 430 B.R. 253, 265 (Bankr. S.D. Fla. 2010). Here, each factor favors UOB, and none of them favors Plaintiffs. Mandatory abstention is therefore inappropriate on this basis as well.

### a. The backlog of the state court and federal court.

Plaintiffs' argument on timely adjudication hinges on its claims that the federal court docket, and specifically the docket for the Southern District of Texas is overloaded. While the UOB Defective Work Lawsuit undoubtedly *is* "core," Plaintiffs' broad contention that the Southern District bankruptcy courts are overwhelmed with cases such that remand is appropriate is an argument regularly considered—and summarily rejected—by the very judge before whom the Bankruptcy is pending, the Honorable Marvin Isgur. *See, e.g., In re Houston Reg'l Sports Network, L.P.*, 514 B.R. 211, 216 (Bankr. S.D. Tex. 2014) (Isgur, J.) ("[D]ocket congestion, is neutral because this Court's docket is neither so overwhelming nor so light as to weigh for or against abstention and remand. Moreover, there is no evidence regarding the state court's docket which would suggest that one forum is more or less congested than the other."); *Special Value Continuation Partners, L.P. v. Jones*, ADV 11-3304, 2011 WL 5593058, at *6 (Bankr. S.D. Tex.

Nov. 10, 2011) (Isgur, J.) (noting that where parties "presented some limited evidence showing bankruptcy courts in the Southern District of Texas are more congested" than other courts, docket congest was "a neutral factor" because "this Court's docket is not overwhelming . . . [but][,] at the same time, it is not so light as to weigh against abstention and remand."). This factor does not favor Plaintiffs.

### b.  The status of the UOB Defective Work Lawsuit and the UOB Bankruptcy.

The UOB Defective Work Lawsuit and the UOB Bankruptcy are both at early stages, as Plaintiffs concede. Pls.' Mot. at 14. This factor does not favor Plaintiffs.

### c.  The complexity of the issues in the UOB Defective Work Lawsuit.

Plaintiffs repeatedly assert that the UOB Defective Work Lawsuit contains merely "garden variety" state-law claims, Pls.' Mot. at 12, but this removes any doubt that the Bankruptcy Court would be fully competent to consider them. Bankruptcy courts regularly handle matters of state law.[7] And, when considering the inefficiency and strain on UOB's bankruptcy estate caused by splitting proceedings between the Bankruptcy Court and Florida state, this factor clearly favors UOB.

### d.  Consent of the parties.

Plaintiffs have indicated that they do not consent to the Bankruptcy Court's adjudication of their claims, but consent only matters to the extent a proceeding is *non-core*. *See, e.g., In re Castex Energy Partners, LP,* 584 B.R. 150, 157 (Bankr. S.D. Tex. 2018), ('With core claims, the

---

[7]     *See, e.g., In re Brooks Mays Music Co.,* 363 B.R. 801, 817 (Bankr. N.D. Tex. 2007) (in analyzing permissive abstention, "[b]ankruptcy courts deal with state law issues frequently."); *see also In re Freeway Foods of Greensboro, Inc.,* 449 B.R. 860, 881 (Bankr. M.D.N.C. 2011) ("bankruptcy courts address matters of state law regularly"). This is true, regardless of distance between the state and the venue of bankruptcy. *See, e.g., In re Think3, Inc.,* 529 B.R. 147, 172 (Bankr. W.D. Tex. 2015) (applying Delaware law in Bankruptcy in Western District of Texas); *In re Shiver,* 396 B.R. 110 (Bankr. S.D.N.Y. 2008) (applying Florida law in Bankruptcy in Southern District of New York); *In re Thiel,* 275 B.R. 633, 640 (Bankr. M.D. Fla. 2001) (applying Montana law to in Middle District of Florida Bankruptcy); *In re First Assured Warranty Corp.,* 383 B.R. 502, 525 (Bankr. D. Colo. 2008) (applying Hawaii law to alter ego claim in Bankruptcy in the District of Colorado).

Court has authority to resolve them through final orders; however, for non-core claims, the court must remand absent consent of the parties."). Plaintiffs have no consent rights as to the Bankruptcy Court's adjudication of (1) the Plaintiffs' claims against UOB and (2) the alter ego claims that are property of UOB's bankruptcy estate.

### e. *Whether a jury has been demanded.*

Plaintiffs repeatedly stress that they have made a jury demand, but this fact is unavailing. Plaintiffs have no jury trial right as to its claims against UOB after UOB filed for bankruptcy protection. *See supra Katchen*, 382 U.S. at 329-330 (1966) ("[I]n cases of bankruptcy, many incidental questions arise in the course of administering the bankrupt estate, which would ordinarily be pure cases at law, and in respect of their facts triable by jury, but, as belonging to the bankruptcy proceedings, *they become cases over which the bankruptcy court, which acts as a court of equity, exercises exclusive control*.") (internal citation omitted) (emphasis added). As to the alter ego claims—UOB (which owns those claims), 1662 Multifamily and the Other Defendants may consent to the Bankruptcy Court conducting a jury trial. *See* 28 U.S.C. § 157(e). Alternatively, the federal district court for the Southern District of Texas may withdraw the bankruptcy reference and conduct a jury trial itself. *See* 28 U.S.C. § 157(d). However, even the Bankruptcy Court may still conduct pretrial matters up until the point that the case is ripe for a jury trial before the federal district court. *In re Brooks Mays Music Co.*, 363 B.R. at 818. This factor does not favor Plaintiffs.

### f. *Whether the bankruptcy case is a reorganization or liquidation.*

Plaintiffs assert without any basis that UOB's bankruptcy is "gamesmanship." UOB is in bankruptcy to mitigate its liabilities and reorganize itself while engaging in an efficient, consolidated and centralized process to fairly compensate creditors. UOB's bankruptcy is

entirely consistent with the purpose of the Bankruptcy Code. Plaintiffs' meritless arguments should be ignored.

In short, none of these determinations of "timely adjudication" within the mandatory abstention test favor Plaintiffs, and they have not met their burden to prove that the UOB Defective Work Lawsuit would be timely resolved in the state court. Accordingly, mandatory abstention must be denied.

### B. This Court should deny Plaintiffs' requests for permissive abstention and equitable remand.

Permissive abstention and equitable remand are two closely associated equitable remedies which fall into the Court's discretion. Essentially, if, upon the bases of "justice" or "in the interests of comity," a federal court deems that abstaining from hearing a proceeding or remanding a proceeding to state court would be appropriate, it has the authority to issue such an order. 28 U.S.C. §§ 1334(c)(1) and 1452(b). The requirements of permissive abstention and equitable remand are, for all intents and purposes, identical. Courts have recognized that permissive abstention is an "extraordinary remedy" that should be used in rare occasions. *See In re Phoenix Diversified Inv. Corp.,* 439 B.R. 231, 246 (Bankr. S.D. Fla. 2010); *In re Black, Davis, and Shue Agency, Inc.*, 471 B.R. 381, 415 (Bankr. M.D. Pa. 2012); *In re Direct Response Media, Inc.*, 466 B.R. 626, 658–59 (Bankr. D. Del. 2012). Accordingly, there is a presumption in favor of the exercise of federal jurisdiction and against abstention. *See Walter v. Freeway Foods, Inc.* (*In re Freeway Foods of Greensboro, Inc.*), 449 B.R. 860, 879 (Bankr. M.D.N.C. 2001); *Rahl v. Bande*, 316 B.R. 127, 135 (S.D.N.Y. 2004). Courts have developed a long list of nonexclusive factors to consider in determining whether to apply these equitable forms of relief, including:

> (1) the effect or lack thereof on the efficient administration of the estate;
> (2) extent to which state law issues predominate over bankruptcy issues;
> (3) difficult or unsettled nature of applicable law;

(4) presence of related proceedings commenced in state court or other nonbankruptcy proceedings;
(5) jurisdictional basis, if any, other than 28 U.S.C. § 1334;
(6) degree of relatedness or remoteness of proceeding to main bankruptcy case;
(7) the substance rather than the form of an asserted core proceeding;
(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;
(9) the burden of the bankruptcy docket;
(10) the likelihood that the commencement of the bankruptcy proceeding in bankruptcy court involves forum shopping by one of the parties;
(11) the existence of the right to a jury trial;
(12) the presence of non-debtor parties;
(13) comity; and
(14) the possibility of prejudice to other parties in the action.

*In re United Container LLC*, 284 B.R. 162, 176 (Bankr. S.D. Fla. 2002); *see also Ramirez v. Rodriguez (In re Ramirez)*, 413 B.R. 621, 631-32 (Bankr. S.D. Tex. 2009).  Plaintiffs bear "the burden of proving by a preponderance of the evidence that abstention is appropriate." *In re Enron Corp. Sec., Derivative & ERISA Litig.*, Civ. A. G-02-0299, 2002 WL 32107216, at *9 (S.D. Tex. Aug. 12, 2002).

"No single factor is dispositive, and the decision does not turn on counting the number of factors on each side.  Rather, a court must consider each of the factors and the evidence relating thereto, and weigh its importance in the decision." *In re Lazar*, 200 B.R. 358, 373 (Bankr. C.D. Cal. 1996); *see also In re Schlotzsky's, Inc.*, 351 B.R. 430, 435 (Bankr. W.D. Tex. 2006) (the factors "must be viewed in the larger context of the task presented—to arrive at the equitable application of the permissive abstention doctrine, as appropriately applied in the bankruptcy context.").  Furthermore, these factors should be applied flexibly, "for their relevance and importance will vary with the particular circumstances of each case." *In re Chicago, Milwaukee, St. Paul & Pacific R. Co.*, 6 F.3d 1184, 1189 (7th Cir. 1993); *In re SBMC Healthcare, LLC*, 519 B.R. 172, 192 (Bankr. S.D. Tex. 2014) (the Court "may give greater weight" to certain factors).

Here, all but one of the fourteen factors favor UOB or do not favor Plaintiffs. Accordingly, permissive abstention and equitable remand are inappropriate.

> ### 1. Adjudicating the UOB Defective Work Lawsuit in Florida state court will negatively impact the efficient administration the Bankruptcy estate.

The most important factor that courts consider is whether adjudicating the claims in state court will negatively impact the efficient administration of the bankruptcy estate. Courts will overwhelmingly favor the most *efficient* means for disposing of a claim—be that in state court or in Bankruptcy. This factor weighs heavily in UOB's favor and against permissive abstention or remand. For example, where "the removed litigations are integral to this bankruptcy," this overwhelmingly disfavors remand as "the removed litigations are integral to th[e] bankruptcy the most efficient way for this bankruptcy case to proceed is to have the removed claims heard here"—that is, in the bankruptcy court. *In re Carriage House Condominiums L.P.*, 415 B.R. 133, 147 (Bankr. E.D. Pa. 2009) (denying movants' motion for equitable remand of state court action for breach of contract, unjust enrichment and state construction law where the at-issue "condominium project *is* this bankruptcy case and the removed claims *each relate* to work performed on the project.") (emphasis in original).

The law strongly disfavors broad application of permissive abstention particularly *because* splitting a bankruptcy from the action—be it state law or not—that forms its "core" would only hinder bankruptcy law's overarching goals of efficiency:

> Finally, a broad permissive bankruptcy abstention doctrine generally contradicts the bankruptcy goal favoring expeditious administration and resolution of bankruptcy cases because, more often than not, the fragmentation of bankruptcy jurisdiction among federal and state courts complicates and stalls the bankruptcy process. The bankruptcy goal of expeditiousness justifies abstention when a delegation of jurisdiction is the most efficient course of action, but these circumstances are exceptional; generally, ***efficient bankruptcy administration is fostered by***

> *resolution of all bankruptcy related litigation in a single bankruptcy forum*.

*See* Susan Block–Lieb, *Permissive Bankruptcy Abstention*, 76 Wash. U. L.Q. 781, 851 (Fall 1998) (emphasis added.); *see also In re Carriage House*, 415 B.R. at 147 ("There is no good reason to take that risk given that the legal theories and claims are, more or less, typical contract and construction law causes of action. Adopting the movants' course could delay resolution of these bankruptcy cases for a long time."). Resolving the UOB Defective Work Lawsuit in the UOB Bankruptcy is in the utmost favor of efficiency—especially where "the legal theories and claims are, more or less, typical contract and construction law causes of action." *See id.*

Here, remand is especially disfavored because the economics of estate administration (and basic concerns of practicality) weigh against abstention. For example, UOB, 1662 Multifamily and all of the Other Defendants are headquartered in Houston, and their witnesses will likely be based in Houston making the Southern District convenient. But in addition, lead-Plaintiff Southstar Capital Group I, LLC has deep connections to Houston, including owning and operating apartment complexes in Houston. Further, UOB has had to retain Florida counsel as part of the UOB Defective Work Lawsuit and continuing to retain such counsel will further stress the bankruptcy estate—especially if simultaneous proceedings occur. Transfer is proper here, because it would aid in the efficient and cost-effective resolution of the proceedings by allowing UOB to consolidate counsel, thereby minimizing the impact on the bankruptcy estate.

Additionally, remand increases the risk of inconsistent judgments and unnecessary depletion of the bankruptcy estate. Consolidating the claims will best protect the estate, as even minor differences in the resolution of the claims as they relate to coverage or indemnity could place significant strain on the bankruptcy estate. Put simply, it neuters the protective function of bankruptcy to allow claims related to nearly the entire value the bankruptcy estate to be

determined by differing courts. Permissive abstention and equitable remand should be denied on this basis alone.

### 2. State law issues do not predominate over bankruptcy issues.

Here, Plaintiffs' claims in the UOB Defective Work Lawsuit are the largest potential liabilities of UOB's bankruptcy estate. Thus, resolving the UOB Defective Work Lawsuit and the corresponding Coverage Lawsuit will be the chief issue that impacts the UOB Bankruptcy. However, the distribution of creditors' claims (including the claims of Plaintiffs) will undeniably be just as important to the resolution of the proceedings as the apportioning of liability itself. Neither state law, or bankruptcy, can be said to "predominate" the other in this action. This factor does not favor Plaintiffs.

### 3. The UOB Defective Work Lawsuit does not involve difficult or unsettled law.

As explained in Section A(2)(c), there is nothing to suggest that the Bankruptcy Court would not be perfectly competent to handle this case, as bankruptcy courts regularly handle matters of state law and this case consists of merely "garden variety" state-law claims, as the UOB Defective Work Lawsuit has been described by the Plaintiffs. This factor favors UOB.

### 4. The related Coverage Action is also pending.

Here, as mentioned above, UOB is involved in an action against its insurance carriers which goes to the *very core* of the UOB Bankruptcy. If, as UOB contends, UOB's insurance carriers are liable to cover, defend and indemnify UOB (and 1662 Multifamily and the Other Defendants), this will drastically alter the assets available to UOB's bankruptcy estate. Because the Coverage Action will most likely also be adjudicated in the Bankruptcy Court, this factor favors UOB.

5.      **Relatedness of the UOB Defective Work Lawsuit to the main bankruptcy case.**

Here, the UOB Defective Work Lawsuit is closely related to the UOB Bankruptcy, as it is the primarily liability involved, and the Plaintiffs are UOB's biggest potential creditors. This strongly disfavors remand or abstention.

6.      **The UOB Defective Work Lawsuit is a "core proceeding."**

As explained *supra* at Section A(1) the UOB Defective Work Lawsuit is a core proceeding. This *overwhelmingly* favors UOB, and by itself is enough to hold against remand or abstention.

7.      **Severing state law claims is not feasible.**

Because Plaintiffs' claims in the UOB Defective Work Lawsuit are all state law claims and are alleged against UOB and all other defendants on an alter ego theory, severing state law claims is not feasible. This dispute should be decided *together with* the UOB Bankruptcy as provided by law. This factor favors UOB.

8.      **The Bankruptcy Court's docket is not burdened.**

As described above in Section A(2)(a), Judge Isgur's docket is not overburdened. This factor favors UOB.

9.      **Despite Plaintiffs' contentions, Defendants have not engaged in forum shopping.**

Plaintiffs have no evidence to support their repeated contentions that Defendants engaged in a "forum shopping charade" when UOB filed for bankruptcy. *See* Pls.' Mot. at 19. Plaintiffs repeatedly emphasize that UOB filed for bankruptcy to control costs of litigation and minimize strain on the debtor's finances, but these are appropriate reasons to file for bankruptcy. This factor favors UOB.

### 10. Plaintiffs do not have a right to a jury trial as to its claims against UOB after UOB has filed for bankruptcy protection.

Plaintiffs have no jury trial right as to its claims against UOB after UOB filed for bankruptcy protection. *See Katchen*, 382 U.S. at 329-330 (1966) ("[I]n cases of bankruptcy, many incidental questions arise in the course of administering the bankrupt estate, which would ordinarily be pure cases at law, and in respect of their facts triable by jury, but, as belonging to the bankruptcy proceedings, *they become cases over which the bankruptcy court, which acts as a court of equity, exercises exclusive control*.") (internal citation omitted) (emphasis added).

As to the alter ego claims—UOB's bankruptcy estate (which owns those claims) and 1662 Multifamily and the Other Defendants may consent to the Bankruptcy Court conducting a jury trial. *See* 28 U.S.C. § 157(e). Alternatively, the federal district court for the Southern District of Texas may withdraw the bankruptcy reference and conduct the jury trial. *See* 28 U.S.C. § 157(d). However, even the Bankruptcy Court may still conduct pretrial matters up until the point that the case is ripe for a jury trial before the federal district court. *In re Brooks Mays Music Co.*, 363 B.R. at 818. Further, when Plaintiffs file a proof of claim in the UOB Bankruptcy, the grant of jurisdiction to the Bankruptcy court would negate any right to jury trial. *See*, *Langenkamp v. Culp*, 498 U.S. 42, 44–45, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990) (citing *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989) ("[T]he creditor's claim and the ensuing preference action by the trustee become integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's *equity jurisdiction*. . . . As such, there is no Seventh Amendment right to a jury trial.") (emphasis in original.) This factor does not favor Plaintiffs.

**11.  The only non-debtors are the other Defendants.**

Here, the only non-debtors involved in the UOB Defective Work Lawsuit are 1662 Multifamily and the Other Defendants.  This factor favors UOB, as 1662 Multifamily and the Other Defendants will be prejudiced by *not* proceeding through Bankruptcy, since UOB's liability to 1662 Multifamily and the Other Defendants (if any) has not yet been determined.

**12.  Comity does not favor Plaintiffs because these are "garden variety" state law claims.**

As described above, and in Section A(2)(d), there is nothing to suggest that the Bankruptcy Court would not be perfectly competent to handle this case, as bankruptcy courts regularly handle matters of state law, *see, e.g.*, *In re Brooks Mays Music Co.*, 363 B.R. at 817; *In re Freeway Foods of Greensboro, Inc.,* 449 B.R. at 881, and the UOB Defective Work Lawsuit consists merely of "garden variety"  state-law claims, as Plaintiffs assert.  Nothing suggests that particularly compelling reasons exist for the state court to retain the action, or that any of these claims involve difficult or unsettled areas of the law.  *In re Houston Reg'l Sports Network, L.P.*, 514 B.R. 211, 217 (Bankr. S.D. Tex. 2014) (determining that comity was neutral because state law claims for fraud, fraudulent inducement, negligent misrepresentation, and breach of contract raised no "novel issues that present a countervailing state interest.").

**13.  There will be no prejudice to other parties.**

As Plaintiffs concede, there are no other parties to the UOB Defective Work Lawsuit to prejudice, which favors UOB.  *See* Pls.' Mot. at 21.

In sum, thirteen of the fourteen factors either favor UOB or do not favor Plaintiffs. Plaintiffs have not satisfied their burden to show that, by a preponderance of the evidence, they are entitled to remand or abstention on equitable grounds.

## IV. CONCLUSION

For the foregoing reasons, UOB respectfully requests that the Court deny the Motion to

Abstain and Remand.

Date: October 4, 2018

Respectfully submitted,

*/s/ Jason A. Perkins*
Jason A. Perkins, Esq.
Florida Bar Number 0610852
Carlton Fields, P.A.
450 S. Orange Avenue
Orlando, Florida 32801-3370
Telephone:    407.244.8250
Facsimile:     407.648.9099
E-Mail: jperkins@carltonfields.com

*Attorneys for Defendant Urban Oaks Builders LLC*

OF COUNSEL:

BAKER BOTTS, L.L.P.
Joseph A. Colagiovanni
Texas Bar No. 24104457 (*Admitted Pro Hac Vice*)
Katherine A. Brooker
Texas Bar No. 24075772 (*Admitted Pro Hac Vice*)
One Shell Plaza
910 Louisiana
Houston, Texas 77002
Telephone:  713.229.1222
Facsimile:  713.229.7922
joseph.colagiovanni@bakerbotts.com
katherine.brooker@bakerbotts.com

Omar J. Alaniz
Texas Bar No. 24040402 (*Admitted Pro Hac Vice*)
2001 Ross Avenue, Suite 900
Dallas, Texas 75201
Telephone: 214.953.6593
Facsimile: 214.661.4593
omar.alaniz@bakerbotts.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 4, 2018, a true and correct copy of the foregoing document was filed electronically with the Court and served electronically upon those parties registered to receive electronic notice via the Court's CM/ECF system, and to all counsel of record at the addresses and email addresses listed below:

Michael A. Hornreich
Matthew I. Kramer
Weinberg Wheeler Hudgins, Guin & Dial, LLC
255 South Orange Avenue, Suite 1260
Orlando, FL 32801
mhornreich@wwhgd.com
mkramer@wwhgd.com

*Counsel for Plaintiffs Southstar Capital*
*Group I, LLC, Cottington Road TIC, LLC,*
*and Durban Road TIC, LLC*

Joseph L. Rebak
Bryan T. West
Akerman LLP
Three Brickell City Centre, Suite 1100
98 Southeast Seventh Street
Miami, FL 33131
joseph.rebak@akerman.com
bryan.west@akerman.com
nancy.perez@akerman.com
anna.martinez@akerman.com

*Counsel for Defendants 1662 Multifamily,*
*LLC, Hines Interests Limited Partnership,*
*Hines 1662 Multifamily, LLC, Hines*
*Investment Management Holdings Limited*
*Partnership, HIMH GP, LLC, Hines Real*
*Estate Holdings Limited Partnership,*
*and JCH Investments, Inc.*

*/s/ Jason A. Perkins*
Jason A. Perkins, Esq.